(58 App. Div. 571.)

## PEOPLE v. HILLMAN.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. FOOD—IMITATION OF BUTTER—PENALTIES—SUFFICIENCY OF EVIDENCE.

Laws 1893, c. 338, as amended by Laws 1897, c. 768, prohibits the sale of oleomargarine manufactured in imitation of natural butter. The evidence in a prosecution thereunder showed the sale by defendant of oleomargarine containing about as much artificial coloring as used in butter, and in close imitation thereof. There was evidence that most butter contained artificial coloring matter, but there was no evidence of the color of natural butter, except that some was nearly white, which would have been the case of the oleomargarine, had it not been colored. Defendant bought the oleomargarine for butter. *Held* insufficient to show that the oleomargarine was manufactured as an imitation of natural butter, since the evidence shows no standard by which a comparison in color can be made.

2. SAME—JUDICIAL NOTICE.

The court will not take judicial notice of the color of natural butter, in a prosecution under Laws 1893, c. 338, as amended by Laws 1897, c. 768, prohibiting the sale of oleomargarine manufactured in imitation of natural butter.

3. SAME.

The intention to imitate the color of natural butter need not be shown in a prosecution under Laws 1893, c. 338, as amended by Laws 1897, c. 768, prohibiting the sale of oleomargarine manufactured in imitation of natural butter, since it is immaterial.

Hirschberg, J., dissenting.

Appeal from municipal court, borough of Brooklyn, Fifth district.

Action by the people against Frederick Hillman to recover a statutory penalty for the sale of oleomargarine manufactured in imitation of natural butter. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Daniel Underhill, Jr., for the People.

Henry A. Powell, for respondent.

GOODRICH, P. J. The action is brought to recover a penalty under section 26 of the agricultural law (chapter 338, Laws 1893, as amended by chapter 768, Laws 1897). The complaint alleges that the defendant, being a retail grocer, had "in his possession, for sale, with other merchandise and stock, at his said place of business, about thirty pounds of a certain substance * * * made in imitation of natural butter; * * * said substance being produced * * * from animal or vegetable fats * * * other than from pure milk and cream, and artificially colored, and commonly known as 'oleomargarine.' " The section is peculiar. It forbids the manufacture of oleomargarine or any article in imitation or semblance of natural butter, or the mixing of certain articles "so as to produce any article or substance or any human food in imitation or in semblance of natural butter," and then provides that no person shall "sell, keep for sale or offer for sale any article, substance, or compound made, manufactured or produced in violation of the provisions of this section." This last clause forbids the selling of an article which has

been manufactured or produced in imitation or semblance of butter. In People v. Marx, 99 N. Y. 377, 2 N. E. 29, the court declared unconstitutional so much of the section above referred to as prohibited the manufacture or sale of any pure and wholesome article of food as a substitute for natural butter. It was held in People v. Arensberg, 103 N. Y. 388, 8 N. E. 736, that the manufacture of an article designed simply to take the place of butter is not an offense, and that "the vital point of the alleged crime is the manufacture and sale of an article which is an imitation and semblance of butter, and so is calculated to deceive, and indicates a deceptive purpose, immediate or ultimate." Having these cases in mind, we decided in People v. Meyer, 44 App. Div. 1, 60 N. Y. Supp. 415, that, in order that the express prohibition contained in section 26 "shall be deemed constitutional, it is essential to construe that prohibition with the remainder of the section, as forbidding only the manufacture and sale of oleomargarine when it is manufactured in imitation or semblance of natural butter." The court dismissed the complaint in the present action on the ground that the plaintiff had failed to show "that the substance offered for sale by the defendant was an imitation of natural butter. * * * There is no evidence in the case showing what the color of natural butter is, excepting that some natural butter is of a pearl white." The only evidence on this subject which I can find is that of Geisier, who analyzed a sample of the article which the defendant had on sale. He said:

"I found it to be a compound semblance of butter, artificially colored. * * * Q. It was a close imitation, was it not, of butter? A. It was. * * * It was oleomargarine. * * * It is a compound which had been churned with milk and salt, and made in imitation of butter. * * * Q. Now, what else was in it? A. Fat. Q. What kind of fat? A. Foreign fats. * * * I mean fats which have not been produced by milk, or cream from the same. * * * This was not made from fats of milk or cream from the same."

He further testified that the specific gravity of the fat used was considerably less than that of butter fat. By the court:

"What makes you conclude that this substance was made in imitation of butter? A. By its general appearance, its taste, and physical properties. Q. A substance of this kind could be made without necessarily being made in imitation of butter, couldn't it? A. It could be made, yes, without its imitating butter. Q. Then how did you determine that this substance was made in imitation of butter? A. By the chemical and physical properties of it. Q. Merely because it resembled butter in appearance that it was made in imitation of butter, or from the chemical properties of it? A. From the chemical properties, and also from the physical properties. Q. That is the only reason that you determine that it was made in imitation of butter? A. With the final coloring matter; yes. Q. There was coloring matter in it? A. Yes. Q. To what extent? A. In amount, I did not determine it. Q. Don't you know that there is an artificial coloring matter placed in most butter? A. Yes. Q. Do you know whether a greater degree of coloring matter was placed in this substance than you will find usually in natural butter? A. Perhaps about the same amount. Q. If this artificial coloring matter had not been in the substance, what would its coloring have been? A. In that case it would be pearl white. Q. Did you ever find butter of that color? A. I have seen some that was very light colored. Q. Isn't it a fact known to you that most butter has a coloring matter in it? A. Most of the butter on the market is colored."

In order to prove that the article in question had been manufactured to imitate in color natural butter, the plaintiff's counsel attempted to prove the color of natural butter, substantially making imitation the basis of the claim for recovery. Geisier testified that most of the butter on the market is colored. There is not, and from the nature of things there cannot be, proof of a fixed and prevailing color of butter sold on the market. It varies in color. The counsel in his brief and on the argument asked the court to take judicial notice of the color of butter. When asked for the color of which judicial notice should be taken, he could not designate one. No more can we. We have, then, no standard in evidence by which a comparison of color can be made between the article kept by the defendant and natural butter; and, while there was evidence that there was coloring matter in the article, it does not follow that it was made an ingredient for the purpose of imitating butter. We do not mean to say that an intention to imitate must be shown. It is sufficient if the result of the manufacture be to produce an article in semblance of butter. Whether this was done with an intent to imitate butter is immaterial. It is true that the defendant admitted that he bought the article as and for butter at about the price of a second quality of butter, and that he did not know that it was oleomargarine until the seizure by the agent of the agricultural department. But we cannot assume, because he bought it as or for butter, that the defendant knew or supposed that it had been manufactured as an imitation or semblance of natural butter, or that he kept it for sale as an imitation of butter. The gravamen of the offense is that the defendant kept it for sale as an imitation of butter. There is no evidence of such fact. The only evidence is that the defendant, who was asked, "Did you sell it for poor butter or best butter?" replied, "I did not sell it myself. It was intended for second butter. Whether my clerks sold it for second or best, I cannot say." The evidence is not sufficient to prove the defendant guilty of the offense described in the constitutional part of the statute.

. The judgment should be affirmed, with costs. All concur, except HIRSCHBERG, J., who dissents.